

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1509-12

**DAMIAN DEMITRIUS EASLEY, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE TENTH COURT OF APPEALS
MCLENNAN COUNTY**

**KEASLER, J., delivered the unanimous opinion of the Court.**

## O P I N I O N

The judge presiding over Damian Easley's trial prohibited Easley's counsel in voir dire from comparing other legal burdens of proof to the beyond-a-reasonable-doubt burden in criminal trials. The court of appeals found the judge's ruling to be erroneous, but harmless after applying a non-constitutional harm analysis. We affirm and overrule our previous cases holding that preventing a defendant's counsel from asking proper questions of the venire is an error of constitutional dimension *per se*.

## BACKGROUND

During voir dire, the judge presiding over Damian Easley's family-violence assault trial prohibited Easley's counsel from discussing different legal standards of proof and contrasting those with standards with the beyond-a-reasonable-doubt standard applicable in criminal trials. The record shows that he tried on several occasions to discuss the lesser standards of probable cause and preponderance of the evidence applicable to civil trials. His attempts were cut short by the judge's admonitions that "we don't compare standards of proof" and "I don't allow you to get into the stairstep thing of probable cause and reason to believe and that sort of stuff." The jury convicted Easley, and he was sentenced to twenty years' confinement. He appealed the judge's refusal to allow him to explore the differing burdens of proof.

In accordance with our *Fuller v. State*[1] opinion, the Waco Court of Appeals held that the judge erred in refusing to allow Easley's counsel to question the jury panel on the differences between the criminal and civil burdens of proof.[2] The court concluded, however, that the error was a non-constitutional error for purposes of a harm analysis and was harmless because it did not affect a substantial right. Easley's petition for discretionary review was granted to determine whether the court of appeals applied the correct harm standard, and if so, whether it reached the correct result.

---

[1] 363 S.W.3d 583 (Tex. Crim. App. 2012).

[2] *Easley v. State*, No. 10-12-00018-CR, 2012 WL 4040798, *1 (Tex. App.—Waco 2012) (mem. op., not designated for publication).

**ANALYSIS**

The court of appeals relied upon this Court's opinions in *Fuller* and *Rich v. State*[3] for the proposition that the non-constitutional harm standard found in Texas Rule of Appellate Procedure 44.2(b)[4] applied to the judge's error. However, neither *Fuller* nor *Rich* expressly support this proposition. In *Fuller*, we held the trial court abused its discretion by prohibiting Fuller's counsel from asking the venire about different burdens of proof found in the law and remanded to the court of appeals to conduct a harm analysis.[5] *Fuller* relied on *Rich* and *Jones v. State*[6] in concluding that this type of error is subject to a harm analysis, but remained silent regarding the nature of the error or under which Rule of Appellate Procedure the error should be evaluated.[7]

*Rich* also provides little guidance on the matter. Similarly confronted with a judge's refusal to allow defense counsel to ask a proper question of the venire, we granted Rich's petition for discretionary review to address the court of appeals' conclusion that the judge's error was harmless.[8] The court of appeals found the error to be non-constitutional and

---

[3] 160 S.W.3d 575 (Tex. Crim. App. 2005).

[4] TEX. R. APP. P. 44.2(b) ("*Other errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

[5] *Fuller*, 363 S.W.3d at 584–85, 589.

[6] *Jones v. State*, 223 S.W.3d 379 (Tex. Crim. App. 2007).

[7] *Fuller*, 363 S.W.3d at 589.

[8] *Rich*, 160 S.W.3d at 576–77.

applied Rule of Appellate Procedure 44.2(b).[9] Because Rich did not contest this conclusion, we assumed without deciding that the court of appeals used the proper rule.[10] Under this assumption, we found that a harm analysis relating to an erroneously excluded question to the venire should be reviewed like an erroneous-admission-of-evidence error and set out various factors to be considered.[11]

In *Jones* we were again presented with a judge's refusal to allow a defendant's counsel to ask a proper question during voir dire.[12] Declining to question previous interpretations of the Texas Constitution provision at issue, the *Jones* majority adhered to precedent and found that the error was of constitutional dimension.[13] In resolving the present case, we find squarely presented what the *Jones* majority found imprudent to resolve: should this Court reevaluate our precedent that prohibiting a defendant's proper question in voir dire is an error that runs afoul of the Texas Constitution?

Article I, § 10 of the Texas Constitution provides, in part, that "[i]n all criminal prosecutions the accused . . . shall have the right of being heard by himself or counsel, or both." We have interpreted this provision to provide the "right to appear by counsel." Two

---

[9] *Id.*

[10] *Id.*

[11] *Id.* at 577–78.

[12] *Jones*, 223 S.W.3d at 380.

[13] *Id.* at 382.

of our earliest cases—*Plair v. State* and *Carlis v. State*—hold that the right to appear by counsel encompasses the right to interrogate prospective jurors.[14] In both cases, the judge refused defendants' counsel the ability to individually ask proper questions of the venire. Upon finding error in both cases, we reversed. However, whether we should continue to apply the holdings in *Plair* and *Carlis* is questionable.

In *Plair*, the judge refused to allow Plair's counsel the ability to ask each prospective juror individually whether he would require the State to prove the offense beyond a reasonable doubt and whether his verdict would be affected by the defendant's race, among other questions.[15] After counsel posed these questions to several jurors individually, the judge became concerned about the amount of time that would be required to seat a jury. As a purported time-saving measure, the judge asked the venire as a group each question Plair's counsel had intended to ask prospective jurors individually "with an admonition that the questions were directed to each individually, and for any one to speak up and answer."[16] In finding that the judge erred, *Plair* emphasized the right to counsel to assess a prospective juror's responses in light of individual questioning:

> Again we think it clear that the right to appear by counsel carries with it the right of counsel to interrogate each juror individually, to the end that he may form his own conclusion after this personal contact with the juror as to

---

[14] *Jones*, 223 S.W.3d at 381; *Plair v. State*, 279 S.W. 267, 269 (Tex. Crim. App. 1925); *Carlis v. State*, 51 S.W.2d 729, 730 (Tex. Crim. App. 1932).

[15] *Plair*, 279 S.W. at 268.

[16] *Id.*

whether, in the counsel's judgment, he would be acceptable to him, or whether on the other hand he should exercise a peremptory challenge to keep him off of the jury.[17]

Because the judge erred in refusing counsel the opportunity to individually question prospective jurors on these issues, the judgment was reversed.[18] The *Plair* Court elaborated on its earlier holding in its opinion on the State's motion for rehearing: "To prepare himself for the intelligent exercise of the peremptory challenges allowed him by statute, one accused of crime has the right, through his counsel, to direct to the veniremen appropriate questions."[19]

In *Carlis*, this Court also found that the trial judge erred in refusing individual questioning and found insufficient the judge's asking the venire as a whole the question Carlis's counsel sought to ask each prospective juror individually.[20] Relying upon *Plair* in large measure, this Court found that the judge's refusal to permit counsel's individual questioning infringed upon his ability to intelligently exercise his statutory peremptory challenges.[21] And like *Plair*, the judgment below was reversed upon finding that the judge

---

[17] *Id.* at 269.

[18] *Id.*

[19] *Id.* at 270 (op. on motion for reh'g).

[20] *Carlis*, 51 S.W.2d at 730.

[21] *Id.*

erred.[22]  Over ninety years later, *Plair* remains controlling law.[23]  While we recognize that precedent should not be overruled lightly,[24] it may be necessary "if the reasons for doing so are weighty enough."[25]  When considering whether to overrule our precedent, we have considered whether the original rule or decision was flawed from the outset and the rule conflicts with other precedent, especially when the other precedent is newer and more soundly reasoned.[26]

We conclude that the reasons for overruling *Plair* and its progeny are sufficiently weighty.  At the outset, even with its assumption that this precedent was correctly decided, the *Jones* majority recognized that calling this particular right a "right to counsel" is a "misnomer" because the right to ask proper questions of the venire would apply even if the accused was representing himself.[27]  But more importantly, *Plair*'s interpretation of Texas Constitution Article I, § 10's "right to be heard" language imprecisely defines an accused's right to counsel by implicitly holding that the use of peremptory challenges is so integral to

---

[22]  *Id.* at 731.

[23]  *See, e.g.*, *Jones*, 223 S.W.3d at 382; *Howard v. State*, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996); *Smith v. State*, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985); *Powell v. State*, 631 S.W.2d 169, 170 (Tex. Crim. App. 1982); *Mathis v. State*, 576 S.W.2d 835, 836–37 (Tex. Crim. App. 1979).

[24]  *See Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001).

[25]  *Grey v. State*, 298 S.W.3d 644, 646 (Tex. Crim. App. 2009).

[26]  *Id.*

[27]  *Jones*, 223 S.W.3d at 381.

the right's existence that any impediment imposed on counsel's ability to use peremptory challenges necessarily means that the accused's right to counsel was violated. We disagree with the overly broad conclusion that every restriction on counsel's voir dire presentation violates an accused's right to counsel.

Furthermore, *Plair*'s holding is flawed because its reasoning would result in every error committed during a proceeding in which the accused is "heard by himself or counsel or both"—meaning every case, as Judge Womack has observed[28]—would be of constitutional dimension. In his dissent in *Jones*, Judge Womack considered a sampling of what counsel does to ensure that the accused is "heard" in trial:

> Counsel may make challenges (both peremptory and for cause) to potential jurors, make an opening statement, object to the evidence offered by the State, cross-examine a witness called by the State, offer evidence, request and object to the court's charges to the jury, argue to the jury, and object to the State's argument to the jury.[29]

If we were to follow *Plair*'s reasoning strictly, any trial error relative to counsel's efforts in one of these areas would rise to the level of constitutional dimension.[30] But we have not so held, and *Plair*'s reasoning is difficult to square with our more recent cases; even a small collection of which illustrates the incongruity.

In *George Alarick Jones v. State*, Jones's counsel objected to the judge's granting of

---

[28] *Id.* at 385 (Womack, J., dissenting).

[29] *Id.* at 384.

[30] *Id.* at 385.

the State's for-cause challenge of a particular veniremember.[31] After finding the judge erred in granting the State's challenge, we were confronted with determining the nature of this error under Texas Rule of Appellate Procedure 44.2. We noted that, "Constitutional provisions bear on the selection of a jury for the trial of a criminal case."[32] However, it was the right to a speedy and public trial by an impartial jury embodied both in the federal and Texas Constitution that this Court identified as the most pertinent to jury selection.[33] Although we stated that a trial judge's error in excluding a potential juror "for impermissible reasons (such as race, sex, or ethnicity) may violate other constitutional provisions," an error in granting the State's challenge was not of constitutional dimension.[34] Accordingly, such an error is normally evaluated under Texas Rule of Appellate Procedure 44.2(b)'s non-constitutional error standard[35]—that the error should be disregarded unless it affected the defendant's substantial rights.[36] We have also relied upon the reasoning in *George Jones* to

---

[31] *George Jones v. State*, 982 S.W.2d 386, 388 (Tex. Crim. App. 1998).

[32] *Id.* at 391.

[33] *Id.*

[34] *Id.* (noting that, "[o]nly in very limited circumstances, when a juror is erroneously excused because of general opposition to the death penalty . . . , does the exclusion of a juror by an unintentional mistake amount to a constitutional violation").

[35] *Id.* at 391–92; *Gray v. State*, 233 S.W.3d 295, 298–99, 301 (Tex. Crim. App. 2007) ("Just as the Supreme Court explained in *Taylor v. Louisiana*, [419 U.S. 522, 538 (1975),] we determined that a 'defendant's only substantial right is that the jurors who do serve on the finally constituted petit jury be qualified. The defendant's rights go to those who serve, not to those who are excused.'") (alterations in original omitted).

[36] TEX. R. APP. P. 44.2(b).

hold that errors in denying a defendant's challenge for cause are non-constitutional errors and should be examined under Rule 44.2(b) to determine whether their effects were harmful.[37]

We have similarly held that many errors concerning the erroneous admission of the State's evidence over a defendant's objections are non-constitutional errors. A review of our previous cases shows that even the erroneous admission of potentially damaging evidence warranted a non-constitutional harm analysis: statements from a deceased victim,[38] a written statement from a surviving victim,[39] emotional testimony in the guilt phase from a victim's mother discussing how she adopted the victim as an infant after volunteering at a hospital,[40] references to a pre-trial proffer and plea negotiations,[41] and scientifically unreliable expert testimony.[42]

Likewise, we have generally labeled errors in sustaining the State's objections to the admission of a defendant's evidence as non-constitutional.[43] Only in specific instances in which the precluded evidence forms a vital portion of the defendant's case will such an error

---

[37] *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001).

[38] *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).

[39] *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

[40] *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

[41] *Whitaker v. State*, 286 S.W.3d 355, 363–64 (Tex. Crim. App. 2009).

[42] *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010).

[43] *Walter v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007).

be considered constitutional error.[44]  A constitutional violation may arise only if "(1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or (2) a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense."[45]  And even when such an error in this context rises to the level of constitutional magnitude, the constitutional provision offended is the Fourteenth Amendment's Due Process Clause of the United States Constitution, specifically the ability to present a defense, not necessarily the right to counsel found in the Texas Constitution.[46]

Errors in ruling on objections to the State's jury arguments have routinely been held to be non-constitutional.[47]  In *Mosely v. State*, the State argued in its jury summation that the defense had attempted to mislead the jurors down "side roads" and "rabbit trails," and that "[t]hey don't want you to stay on the main road because they know where that will take

---

[44]  *Id.*; *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).

[45]  *Walters*, 247 S.W.3d at 219.

[46]  *See generally Potier*, 68 S.W.3d at 659–65 (reviewing the holdings of the United States Supreme Court and federal circuit courts).

[47]  *See, e.g.*, *Brown v. State*, 270 S.W.3d 564, 572 (Tex. Crim. App. 2008); *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000); *Mosely v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998).  *But see Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011) (stating that "[a] comment on a defendant's failure to testify violates both the state and federal constitutions as well as Texas statutory law.").

you."[48] Mosely objected that the argument was an attack on him over the shoulders of counsel. The judge overruled the objection. This Court stated that "[a]lthough a special concern, improper comments on defense counsel's honesty have never been held to amount to a constitutional violation. Instead we have characterized such comments as falling outside the areas of permissible argument. We find that such comments constitute 'other errors' within the purview of Rule 44.2(b)."[49] In *Martinez v. State*, the State argued in closing arguments in the punishment phase of Martinez's death-penalty trial that "the victims and families cry out for the death penalty" and for jurors to "think about the nurses in the penitentiary. Think about the secretaries. Think about the guards."[50] We found that both comments were outside the record. Following *Mosely*'s holding, the *Martinez* Court found that "[c]omments upon matters outside the record, while outside the permissible areas of jury argument, do not appear to raise any unique concerns that would require us to assign constitutional status."[51]

The above cases demonstrate that *Plair* is anomalous in equating a judge's single error in voir dire, which may adversely affect counsel's use of peremptory challenges, with a deprivation of the right to counsel itself and therefore a constitutional error. In so holding,

---

[48] *Mosely v. State*, 983 S.W.2d at 258.

[49] *Id.* at 259.

[50] *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000).

[51] *Id.*

*Plair* exalts the questioning of veniremembers and use of peremptory challenges above all of counsel's other duties inherent in his representation of an accused that are equally important to ensuring the accused receives a fair trial.[52] Our more recent cases also undermine the force of *Plair*'s holding by continuing to apply a non-constitutional harm analysis to errors that, under *Plair*'s reasoning, could be considered an infringement on the accused's right to be heard by counsel. Again, if we were to associate any trial error relative to counsel's ability to ensure the accused is "heard" at trial, we would be forced to reach the illogical conclusion that nearly every error in a criminal case is of constitutional dimension because the error, in some measure, deprived the accused of his right to counsel.

For these reasons, we overrule *Plair* to the extent it holds that erroneously limiting an accused's or counsel's voir dire presentation is constitutional error because the limitation is a *per se* violation of the right to counsel. This, of course, is different from holding that such an error may never rise to the level of constitutional magnitude. There may be instances when a judge's limitation on voir dire is so substantial as to warrant labeling the error as constitutional error subject to a Rule 44.2(a) harm analysis. This case, however, does not present one. The court of appeals correctly held that the judge's error in prohibiting Easley's counsel from asking proper questions of the venire was non-constitutional error. It is

---

[52] *See Jones*, 223 S.W.3d at 384 (Womack, J., dissenting) ("Why is only an error in ruling on a question to a potential juror always of constitutional dimension? The Constitution does not say so. Is it because counsel's question to a potential juror is more 'constitutional' than counsel's challenge of a juror, or the introduction of evidence, or the court's charge to the jury, or the argument of counsel? Surely not.").

undoubtedly important for jurors to understand the concept of the beyond-a-reasonable-doubt burden of proof.[53] While erroneous, the judge's refusal to allow Easley's counsel to compare other burdens of proof did not mean he was foreclosed from explaining the concept of beyond a reasonable doubt and exploring the veniremembers' understanding and beliefs of reasonable doubt by other methods.

## RULE 44.2(b) HARM ANALYSIS

The court of appeals reviewed the error under Rule 44.2(b), which requires that "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."[54] In *Rich*, we held that the same general factors used in cases in which evidence was erroneously admitted are relevant considerations in determining harm from being denied a proper question to the venire.[55] We stated that an appellate court "should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.[56]

---

[53] *Fuller*, 363 S.W.3d at 588.

[54] *Easley*, 2012 WL 4040798 at *2; TEX. R. APP. P. 44.2(b).

[55] *Rich*, 160 S.W.3d at 577–78.

[56] *Id.*

Relying on our *Rich* opinion, the court of appeals found that the judge's error did not have a substantial and injurious effect or influence on the jury's verdict.[57] We agree that a review of the record weighs against finding harm. In particular, we find the entirety of Easley's counsel's voir dire and the nature of the evidence supporting the verdict to be the most applicable and significant factors in light of the particular error found by the court of appeals.

Although not permitted to compare differing standards and do what the trial judge characterized as the "stairstep thing," counsel was still free to question the venire concerning their concept of reasonable doubt, albeit by a different manner.[58] Even though counsel was denied his preferred method of describing the criminal burden of proof, he was able to clarify that the standard of proof in a civil trial was different, and when he asked a veniremember why the civil standard is different from the criminal standard, the veniremember answered, "Well, I guess because of the seriousness of the issue." Although not permitted to compare and contrast differing burdens of proof at length, he was not precluded from discussing and explaining the beyond-a-reasonable-doubt standard. Other portions of counsel's voir dire suggest he did just that. He individually asked the first forty-four veniremembers, "If there is something that raises in your mind a single doubt based on reason as to assault, what's

---

[57] *Easley*, 2012 WL 4040798 at *2.

[58] *See Fuller*, 363 S.W.3d at 587 (concluding that "inquiry into a prospective juror's understanding of what proof beyond a reasonable doubt means constitutes a proper question.").

your verdict?" All answered, "Not guilty."  By his questioning and subsequent responses, Easley's counsel was able to demonstrate and effectively make his point that criminal trials require a heightened burden of proof and the presumption of innocence. Counsel repeated his point in closing arguments: "Remember during jury selection we talked about the State's burden of proof, beyond a reasonable doubt.  It's used for taking away a person's liberty. That's [why] we are in this courtroom.  Before you take away the liberty of my client, all doubt based on reason must be excluded . . . . All doubt based on reason as to assault must be excluded, if you have a single doubt in you mind based on reason as to assault in this case."

Additionally, the evidence supporting the jury's verdict was substantial.  The victim testified that Easley punched her in the back, called her names, pulled her down on the couch by her hair, choked her, and then threatened, "I'll be back and shoot this whole place up," before fleeing the scene.  The admitted photographs show injuries consistent with the manner of Easley's assault.  The testimony from three witnesses corroborated the victim's testimony in that they saw that the victim was visibly upset, saw the effects of the victim's assault injuries, which were consistent with victim's description of the assault, and heard the threats to "shoot the place up."  One of the three identified Easley as the one who made the threat.

## CONCLUSION

The court of appeals correctly concluded that the error in refusing Easley's counsel from discussing other burdens of proof in voir dire was a non-constitutional error analyzed

under Rule 44.2(b). We further conclude that the court of appeals was correct in finding the

error harmless.  The court of appeals' judgment is affirmed.


DELIVERED: March 12, 2014

PUBLISH