**Affirm and Opinion Filed July 14, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-09-01099-CR

**LADEREK ADARIOUS FULLER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F08-53000-V**

## MEMORANDUM OPINION ON REMAND

Before Justices Bridges, O'Neill, and Richter[1]
Opinion by Justice Bridges

Laderek Adarious Fuller was convicted of capital murder in the course of a robbery and sentenced to life imprisonment. On original submission, this Court overruled his complaint that the trial court abused its discretion in refusing to allow him to question the venire about the differences in the burdens of proof. *Fuller v. State*, No. 05-09-01009-CR, 2011 WL (Tex. App.––Dallas Jan. 31, 2011) (not designated for publication). The Texas Court of Criminal Appeals concluded the trial court abused its discretion, reversed this Court, and remanded for a harm analysis.[2] *Fuller v. State*, 363 S.W.3d 583 (Tex. Crim. App. 2012). The parties filed supplemental briefs addressing the issue of harm. We affirm the trial court's judgment.

---

[1] The Hon. Martin Richter, Retired Justice, sitting by assignment.

[2] We also overruled appellant's challenges to the sufficiency of the evidence to support the conviction and the trial court's denial of a lesser-included offense instruction on felony murder. The voir dire complaint is the only issue on which discretionary review was granted.

## APPLICABLE LAW

After the case was remanded, the Texas Court of Criminal Appeals issued *Easley v. State*, 424 S.W.3d 535 (Tex. Crim. App. 2014).[3]  In *Easley*, the court held that the proper standard for determining whether a defendant was harmed by the trial court's error in limiting an accused's or counsel's voir dire is the non-constitutional standard set forth in Texas Rule of Appellate Procedure 44.2(b).  *Id.* at 541.  The court noted there may be instances when a judge's limitation on voir dire is so substantial as to warrant labeling the error constitutional under rule 42.2(a).  *Id.* The court concluded, however, that the error in not allowing defense counsel to compare the various burdens of proof did not rise to such a level because it did not foreclose appellant's counsel from explaining the concept of beyond a reasonable doubt and exploring the venire members' understanding and beliefs of reasonable doubt by other methods.  *Id.*

Under rule 44.2(b), "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  TEX. R. APP. P. 44.2(b).  A substantial right is affected when "the error has a substantial and injurious effect or influence in determining the jury's verdict."  *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005).   In conducting a harm analysis, we must consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.  *Easley*, 424 S.W.3d at 542; *Rich*, 160 S.W.3d at 577.

---

[3] On remand, the parties briefed the issue of harm under the constitutional standard.  Neither party filed a supplemental brief following the issuance of *Easlsey*, nor do we conclude we need additional briefing to analyze harm under the non-constitutional standard.

ANALYSIS

Appellant asserts he was harmed by the trial court's error because it limited his ability to use his peremptory challenges, the jury charge said little about the burden of proof, the State and defense presented conflicting arguments as to how the beyond a reasonable doubt burden was to be applied, and the weight of the evidence of appellant's guilt was not strong. The State responds that appellant was not harmed because neither the effectiveness of counsel nor the outcome of the case was affected by the trial court's error.

Outside the venire's presence, appellant's counsel asked the trial court to allow her to "ask each and every member of the venire panel if they understand that proof beyond a reasonable doubt is the highest burden under the law, that it's higher than clear and convincing evidence." Counsel also stated she wanted to start with the civil standard of preponderance of the evidence and ask the venire members about their understanding of the beyond a reasonable doubt standard. The trial court denied the request and brought the venire into the courtroom.

Before the attorneys began their questions, the trial court explained to the jury the presumption of innocence and told the jury the State had the burden to prove guilt beyond a reasonable doubt. The trial court emphasized the importance of the jury's role in the trial. The prosecutor repeated that appellant was presumed innocent and the State had the burden to prove guilt beyond a reasonable doubt. Nothing in the prosecutor's statements or questions indicated the State had to prove anything less than all of the elements of the offense charged. Appellant's counsel did not spend much time discussing the beyond a reasonable doubt burden of proof during voir dire. Rather counsel focused on other matters, including witness credibility determinations and the voluntariness of confessions or statements.

Although conflicting, the record contains considerable evidence of appellant's guilt.[4] There was evidence that appellant, along with three other men, went to Dominque May's house to rob him. May sold a drug called "drank," a syrup-type drug that is typically packaged in two-ounce "pimento jars." Octavious Williams was at the house with May when the robbers arrived. Williams testified he did not know any of the men. He testified a "bright dude with braids" was talking to May and "the darker dude" who was standing by the door was the shooter. The other two men did not say anything. After shooting May, the shooter forced Williams to lie down on the floor and began to kick Williams. Marcus Ellmore arrived at the house while the robbery was ongoing and, through a window, saw May and Williams lying on the floor. Ellmore heard voices inside the house, heard someone say "you grab the chopper," which meant an assault rifle, and heard the sound of glass jars clinking together. Demetrius Ellis, one of the robbers, testified the four men, including appellant, planned to commit a robbery and they drove to May's house in two cars. Ellis testified appellant was standing closest to the door and appellant shot May. Laquita Hunt, Ellis's girlfriend, testified three of the men divided up pimento jars of "syrup" at her house, setting aside appellant's portion, which he received when he arrived at the house later. Finally, appellant's videotaped statement to police was admitted into evidence. In the statement, appellant initially denied being anywhere near May's house on the night of the murder. Later, appellant admitted being present at the time of the robbery and standing by the door. However, he stated he was only there to buy "drank" and he denied shooting May.

The jury charge included instructions on the presumption of innocence, that the State had the burden to prove guilt beyond a reasonable doubt, and that the defendant was presumed innocent and should be found not guilty on that presumption alone if the State did not prove guilt beyond a reasonable doubt of each and every element of the offense charged. The jury charge

---

[4] The evidence was set out in our opinion of January 31, 2011.

provided for the jury to find appellant guilty of capital murder either as a principal or a party or not guilty of the offense. During closing arguments, the prosecutor reminded the jury that the State had the burden to prove appellant's guilt beyond a reasonable doubt as to the elements of the offense as set out in the jury charge. Although the prosecutor used the language "only those elements," he clearly directed the jury to pages five and six of the charge where the elements of the offense as a principal and a party are set out. Thus, the prosecutor did not imply the jury could find appellant guilty on anything less than all of the elements of the offense. In her closing, appellant's counsel reminded the jury that the State had the burden of prove guilt beyond a reasonable doubt and focused on the State's lack of physical evidence to show appellant was the shooter and the lack of evidence to show a robbery was planned in advance.

Nothing in the record reflects appellant was prevented from questioning the venire members so as to effectively utilize his peremptory strikes or that the jury was unable to properly apply the beyond a reasonable doubt burden of proof to the evidence before it. Accordingly, we conclude appellant was not harmed by the trial court's error in denying counsel the right to discuss and question the venire members about the burdens of proof. *See* TEX. R. APP. P. 44.2(b); *Easley*, 424 S.W.3d at 543. We overrule appellant's issue.

We affirm the trial court's judgment.


/David L. Bridges/

Do Not Publish                    DAVID L. BRIDGES
TEX. R. APP. P. 47              JUSTICE
091099F.U05

–5–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

LADEREK ADARIOUS FULLER,
Appellant

No. 05-09-01099-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F08-53000-MV.
Opinion delivered by Justice Bridges,
Justices O'Neill and Richter participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered July 14, 2014