

# IN THE
# TENTH COURT OF APPEALS

### No. 10-20-00092-CR

**ROBERT NOEL RAY,**

                                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                            **Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 18-00356-CRF-85

---

## MEMORANDUM OPINION

---

Robert Ray was convicted of the felony offense of Driving While Intoxicated, with two prior convictions. *See* TEX. PENAL CODE §§ 49.04; 49.09(b)(2). His punishment was enhanced with a prior felony conviction, and he was sentenced to 15 years in prison. *See id*. § 12.42(a). Because the trial court did not abuse its discretion in admitting and excluding evidence, the trial court's judgment is affirmed.

**BACKGROUND**

Ray was involved in an automobile accident in which he pulled out in front of

another vehicle, causing the other vehicle to strike Ray's vehicle. Although not initially noticeable, as the investigation of the accident continued, the investigating officer noticed Ray smelled like alcohol, had "thick" speech, and was unsteady. Ray told the officer he had come from a bar where he had three drinks in the hour before the accident. When asked what kind of drinks, Ray said, "Enough." Ray also told the officer to arrest him. When conducting the HGN sobriety test, the officer noted six out of six "clues." During the test, Ray had to steady himself on the officer's patrol car. After the officer's investigation, he concluded Ray was intoxicated and arrested Ray.

**EXPERT TESTIMONY**

In his first issue, Ray contends the trial court abused its discretion in allowing the officer to testify. Specifically, Ray argues the officer's testimony regarding the HGN test evidence was not sufficiently reliable because the State did not show the officer properly applied the scientific technique of the HGN test as administered to Ray.

We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion, and we may not reverse those rulings unless they fall outside the zone of reasonable disagreement. *Blasdell v. State*, 384 S.W.3d 824, 829 (Tex. Crim. App. 2012). Pursuant to Texas Rules of Evidence 702 and 705, three requirements must be met before expert testimony can be admitted: "(1) The witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *see* TEX. R. EVID. 702; 705; *Wolfe v. State*, 509 S.W.3d 325,

335 (Tex. Crim. App. 2017). These requirements are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). The *Kelly* test for reliability of evidence requires: (1) the underlying scientific theory must be valid, (2) the technique applying the theory must be valid, and (3) the technique must have been properly applied on the occasion in question. *Id.* at 671; *Kelly*, 824 S.W.2d at 573. *See Emerson v. State*, 880 S.W.2d 759, 768 (Tex. Crim. App. 1994). It is only the third element of the *Kelly* test that Ray addresses on appeal.

Prior to trial, the State notified Ray that it might call the officer, among others, to testify as an expert witness. In response, Ray filed a Motion for Voir Dire Examination of Expert, in which he requested a hearing so that he could conduct a voir dire examination of each of the State's proposed experts. He also requested that the trial court rule on the admissibility of the expert's testimony at the conclusion of the voir dire examination. At that time, Ray did not specify on what topics he intended to examine the proposed experts. After the jury was selected and before the start of the guilt/innocence phase of the trial, a hearing was held pursuant to Ray's motion. The only potential expert witness available for this pre-trial hearing was the officer. After testimony was presented to the trial court, Ray stated,

> Judge, my argument is essentially going to be under *Kelly* right here, 702; that evidence that you have right here is the underlying scientific theory valid, is the technique valid, is the technique properly applied to the incident in question? We don't have enough evidence for him to be –
> ***
> We don't have enough evidence for him to be certified as an expert to testify here.

In response, the State summarized the officer's training and experience and argued

the officer was qualified as an expert:

> He's more than qualified to talk about how these tests are administered, what signs he's looking for, what nystagmus means on top of other common [signs] of intoxication that he notices throughout his investigations.

> He's qualified, he is an expert, he should be allowed to testify in front of the jury to help the jury understand this case.

The trial court found the officer to be "qualified[.]"

Despite what Ray stated in his one-sentence argument, it is clear from the record that everyone at the hearing was concerned with the officer's qualification as an expert, that is, his knowledge, skill, experience, training, or education.[1] And when the trial court ruled that the officer was qualified, Ray did not inform the court that Ray was challenging, as he states on appeal, the officer's application of the HGN techniques to Ray's situation, not the officer's qualification as an expert.

Thus, Ray's issue on appeal, that the evidence was not sufficiently reliable, does not comport with the issue presented in the trial court and presents nothing for review. *See Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). *See also Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) (to preserve a complaint for review, the issue on appeal must also comport with the objection made at trial).

Nevertheless, even if Ray's one sentence argument is enough to comport with his issue on appeal, we find the evidence was sufficiently reliable. At the pretrial Rule 702

---

[1] Even during trial, Ray focused on the officer's training rather than whether he performed the test as required by his training.

hearing, the officer testified that he was trained pursuant to the National Highway Transportation Safety Administration handbook during his police officer academy to administer the HGN test and was certified at that time to administer the test. As far as he knew, no refresher course was required to maintain his certification. The officer relayed how he administers the test, as he has been trained, and what items he looks for when conducting the test. He further stated that since his certification, he has practiced the techniques on other officers and, as a field-training officer, has trained rookie officers by performing the techniques on intoxicated subjects. The officer then confirmed that he administered the test to Ray as he was trained to do.

Accordingly, the trial court did not abuse its discretion in allowing the officer to testify. Ray's first issue is overruled.

**OPTIONAL COMPLETENESS/FULL DEFENSE**

In his second issue, Ray asserts that he suffered a due process violation when the trial court deprived him of the right to present a full defense by ignoring the Rule of Optional Completeness. Specifically, Ray contends the trial court erred when it excluded evidence that a portable breath test (PBT) given to Ray 30 minutes after a blood draw registered a 0.04 blood alcohol concentration. A portion of an officer's body cam footage had been introduced into evidence without objection. The portion Ray contends should have also been admitted had been redacted. Ray contends the redacted portion was necessary to allow him to make a "full defense." He further contends that the redacted portion of the video eliciting the PBT results was admissible under Texas Rule of Evidence 107, the Rule of Optional Completeness.

We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion, and we may not reverse those rulings unless they fall outside the zone of reasonable disagreement. *Blasdell v. State*, 384 S.W.3d 824, 829 (Tex. Crim. App. 2012). Generally, errors in excluding the admission of a defendant's evidence are non-constitutional errors reviewed under Rule 44.2(b) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(b); *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). Only in specific instances in which the precluded evidence forms a vital portion of the defendant's case will such an error be considered constitutional error. *Easley v. State*, 424 S.W.3d 535, 540 (Tex. Crim. App. 2014); *Walters*, 247 S.W.3d at 219; *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).

A constitutional violation may arise *only if* "(1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or (2) a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense." *Easley*, 424 S.W.3d at 540 (quoting *Walters*, 247 S.W.3d at 219). If an error in this context rises to the level of constitutional magnitude, the constitutional provision offended is the Due Process Clause of the United States Constitution, specifically the ability to present a defense. *Easley*, 424 S.W.3d at 540. In such a case, Rule 44.2(a), the standard harm analysis for constitutional errors, would apply. TEX. R. APP. P. 44.2(a); *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007).

In this issue, Ray does not complain that Rule 107 "categorically and arbitrarily"

prohibits him from offering otherwise relevant, reliable evidence vital to his defense. Rather, Ray contends the trial court's "clearly erroneous" ruling regarding the inapplicability of Rule 107 results in the exclusion of admissible evidence that forms a vital core of his theory of defense and effectively prevents him from presenting that defense. Thus, we must first determine whether the trial court's decision to exclude the specific redacted portion of the officer's body cam video was error.

Rule 107 is a rule of admissibility that permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *Walters v. State*, 247 S.W.3d 204, 217-18 (Tex. Crim. App. 2007). It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. *Id*. at 218. Rule 107 does not permit the introduction of other similar, but inadmissible, evidence unless it is necessary to explain properly admitted evidence. *Id*.; *see also Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004) ("The plain language of Rule 107 indicates that in order to be admitted under the rule, the omitted portion of the statement must be 'on the same subject' and must be 'necessary to make it fully understood.'").

Like the HGN sobriety test, portable breath test results are generally admissible to show the presence of alcohol, not a specific blood alcohol concentration. *See Fernandez v. State*, 915 S.W.2d 572, 576 (Tex. App.—San Antonio 1996, no pet.) (portable breath test evidence admissible to establish presence of alcohol but not alcohol concentration). *See also Emerson v. State,* 880 S.W.2d 759, 769 (Tex. Crim. App. 1994) (same regarding HGN test). Thus, in this case, the specific blood alcohol concentration measured by the PBT is

not admissible pursuant to Rule 107 unless it is necessary to explain properly admitted evidence. *See Walters v. State*, 247 S.W.3d at 218.

After Ray was arrested and while at the jail, someone in a uniform gave Ray a PBT. When Ray asked about the results, the person stated, "I'm not sure if it's right, but it says 0.04." The administering of the PBT and the statement were recorded on the officer's body cam video.

After the officer testified, Ray first sought to introduce the remainder of the officer's body cam video. But before the trial court ruled on the request, the trial court allowed the phlebotomist and the chemist to testify. The chemist testified as to Ray's blood alcohol concentration resulting from the blood test. Thus, after that testimony was introduced, the trial court interrogated the State about whether the additional portion of the video Ray requested to be introduced might be necessary to explain the blood test results. However, after thoroughly questioning the State about why the video would not be admissible under Rule 107, and after Ray narrowed his request to the portion of the video starting from when a PBT had been administered through the verbalized result of the test, the trial court ruled the requested portion of the video was not admissible because it would leave a "false impression that that's some type of scientific validity associated with [the PBT] by letting them hear that."

After reviewing the record, we find there was nothing that would make the introduction of the specific PBT results necessary to explain or make the blood test results or any other testimony understood. No evidence was presented about the scientific theory or the reliability of the PBT device. No evidence was presented that the PBT device

operated on a similar or related scientific principle as a blood test conducted in an accredited laboratory. Further, the uniformed person in the video who administered the PBT was not identified or called as a witness. Moreover, the portion of the body cam video that was introduced did not relate to the PBT or a specific BAC.

Accordingly, the trial court did not err in excluding the evidence pursuant to Rule 107; and because the trial court did not err, no constitutional harm occurred. Ray's second issue is overruled.

**CONCLUSION**

Having overruled each issue raised on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
  Justice Johnson, and
  Justice Smith
Affirmed
Opinion delivered and filed August 10, 2022
Do not publish
[CR25]

